UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-370-KSF

EILEEN SUSAN MAYNES     PLAINTIFF

v.     **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security     DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Eileen Susan Maynes, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was made pursuant to proper legal standards.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Maynes filed her claim for DIB and SSI on August 7, 2006, alleging an onset date of June 14, 2006 [TR 99, 104]. After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on July 17, 2008 [TR 9]. Maynes subsequently requested review by the Appeals Council. The Appeals Council declined Maynes' request for review on September 23, 2008 [TR 1]. Maynes has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

At the time the ALJ rendered his decision, Maynes was 48 years old [TR 99]. She attended

1

school through the eighth grade and has past relevant work experience on an assembly line at a factory [TR 131, 135]. Maynes claims that she became unable to work beginning on June 14, 2004, due to problems with her back, neck, legs and breast [TR 99, 130].

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f).

Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

In this matter, the ALJ first noted that Maynes meets the insured status requirements of the Social Security Act and thus is eligible to apply for DIB benefits [TR 11]. Then, the ALJ began his analysis at step one by determining that Maynes has not engaged in substantial gainful activity since her alleged onset date [TR 11]. At step two, the ALJ found that Maynes suffers from the severe impairments of lumbar and cervical degenerative disc disease and borderline intellectual functioning [TR 11]. Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 13-15].

At the final steps, the ALJ found that Maynes has the residual functional capacity ("RFC") to lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand/walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally crouch or stoop; occasionally climb ramps/stairs/ladders/ropes/scaffolds; and frequently kneel or crawl [TR 15]. With respect to her mental RFC, the ALJ found that Maynes was moderately limited in the following activities: understanding and remembering detailed instructions, sustaining concentration and persistence to carry out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and work week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; and responding appropriately to changes in the work setting [TR 15-16]. An RFC is the assessment of a claimant's maximum

remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1).

Based on this RFC, the ALJ found that Maynes is unable to return to her past relevant work as an assembly worker [TR 18]. Considering the testimony of the Vocational Expert ("VE"), the ALJ found that Maynes is capable of making a vocational adjustment to other work. The ALJ noted that under the Medical-Vocational Guidelines, if Maynes were capable of performing a full range of light work, a finding of not disabled would be mandated. However, because her ability to perform a full range of light work is limited by some non-exertional limitations, the ALJ relied on the VE's testimony that given Maynes' age, education, past relevant work experience and RFC, she maintains the capacity for limited light work that exists in a significant number in the economy [TR 18-19]. Consequently, the ALJ determined that Maynes was not disabled within the meaning of the Social Security Act [TR 19-20].

**II.     GENERAL STANDARD OF REVIEW**

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve

conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**III.    ANALYSIS**

On appeal, Maynes argues that the ALJ's determination was not based on substantial evidence or decided by the proper legal standards for two reasons. First, Maynes contends that the ALJ failed to accord appropriate weight to the disabling opinion of her treating doctor, Dr. George R. Chaney. Second, Maynes argues that the ALJ erred by failing to properly consider her subjective complaints of disabling pain. For the reasons set forth below, the Court rejects Maynes' arguments and concludes that the ALJ's decision was based on substantial evidence and decided by the proper legal standards.

**A.    THE ALJ PROPERLY DISCOUNTED THE OPINION OF MAYNES' TREATING PHYSICIAN, DR. CHANEY**

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comissioner of Social Security*, 127 F.3d 525, 530-31 (6th Cir. 1997); *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical

advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

However, the Commissioner is not bound by a mere conclusory statement of a treating physician, particularly where it is unsupported by detailed, objective criteria and documentation. *See Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). In other words, the supportability of a treating physician's opinion depends on the degree to which the source

presents relevant evidence to support the opinion, and in particular, support the opinion with medical signs and laboratory findings. 20 C.F.R. §§ 416.927(a), (d)(3). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *2 (1996). If an ALJ declines to accord controlling weight to a treating physician opinion, then the ALJ must give good, specific reasons for the weight accorded the opinion. *Wilson*, 378 F.3d at 544. This is essentially a procedural safeguard, ensuring that a claimant understands the disposition of her case, and that the ALJ applied the treating physician rule so as to provide meaningful judicial review of that application. *Id*. at 544-45.

Maynes argues that the ALJ erred by rejecting the opinion of Dr. Chaney who, on May 11, 2007, opined that Maynes could perform the following exertional activities: occasionally lift twenty pounds; frequently lift ten pounds; sit for two hours in an 8-hour workday and for twenty to thirty minutes at a time; stand and walk for two hours in an 8-hour workday and walk for ten to fifteen minutes at a time; and twist, stoop, crouch, and climb [TR 558-59]. Additionally, he opined that she needs to lie down frequently during the day [TR 558]. The ALJ rejected Dr. Chaney's opinion as it pertained to Maynes' ability to sit, stand, walk and her need to lie down frequently because it was inconsistent with his treatment notes, the remainder of his opinion of her ability to do work-related activities, and Maynes' reported activities of daily living [TR 17-18].

Substantial evidence supports the ALJ's decision to reject Dr. Chaney's opinion. The great weight afforded to treating physicians is predicated on a treating source opinion being well-supported by detailed objective medical documentation. *See* 20 C.F.R. § 404.1527(d)(2); *Cohen v. Sec'y of*

7

*Health and Human* Serv., 964 F.2d 524, 528 (6th Cir. 1992). While the medical records of Dr. Chaney do document a continuing course of treatment for Maynes, the record simply lacks detailed objective medical findings to support his opinion. There are simply no objective medical findings to support his opinions concerning her ability to sit, stand, and walk, or her need to lie down. The only basis for his limitations was a handwritten reference to an MRI [TR 558-59]. A vague reference to one MRI which is not attached to his opinion or included in the record, is not sufficient to entitle Dr. Chaney's opinion controlling weight.

Moreover, Dr. Chaney's opinion was inconsistent with his treatment notes, the remainder of his May 16, 2007 opinion, and Maynes' reported activities of daily living. A review of Dr. Chaney's treatment records reveal that Maynes reported that her pain was relieved by medication and that the treatment had improved her ability to perform daily activities [TR 447-48, 451, 455, 546-51, 552-55, 563-68, 572-74]. The results of Dr. Chaney's objective tests are also inconsistent with his limitations. For instance, the following tests were normal: a CT scan of Maynes' head; an ultrasound of her pelvis (except for a small cyst on her ovary); an arthritis lab study (except for an elevation of the C-reative protein); a metabolic panel; and a bone density test [TR 556, 493, 486, 467-68]. An MRI of Maynes' left knee showed small joint effusion and that the medial and lateral meniscus were intact [TR 537]. An MRI of September 26, 2006 indicates that Maynes' lumbar spine was normal with only a mild disc bulge at L5 [TR 494].

Furthermore, although Dr. Chaney's May 2007 opinion significantly limited Maynes' ability to sit, stand and walk, he opined that she could occasionally twist, stoop, crouch, and climb for up to one-third of an eight hour workday [TR 559]. The fact that he opined that she could engage in twisting, stooping/bending, crouching, and climbing for over two hours each day is inconsistent with

his opinion that Maynes is unable to stand, walk, or sit for two hours a day [TR 558-59].

Finally, as the ALJ found, Dr. Chaney's opinion is inconsistent with Maynes' reported activities of daily living. Maynes testified that in a typical day she does light cleaning and laundry, reads to her granddaughter, and shops for groceries "sometimes" [TR 39, 41]. She is able to feed, dress and bathe herself. Maynes testified that she drives to the bus stop twice a day to drop off and pick up her granddaughter [TR 26]. These activities are simply not consistent with Dr. Chaney's opinion regarding Maynes' ability to sit, stand, and walk.

Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Chaney's opinion is not entitled to controlling weight. By explicitly addressing Dr. Chaney's opinions and setting forth good reasons for not according it controlling weight, the ALJ fully complied with the procedural safeguards set out in the regulations and *Wilson*.

**B.      SUBJECTIVE COMPLAINTS OF DISABLING PAIN**

Maynes also argues that the ALJ erred by failing to properly consider her subjective complaints of disabling pain. The ALJ found that although Maynes' "medically determinable impairments could reasonably be expected to produce the alleged symptoms, . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" [TR 17]. In making this determination, the ALJ noted that the alleged onset of her disability is the same date she was laid off from her job. Nevertheless, she applied for and received unemployment benefits for one year. If she was unable to work due to a disability, then according to the ALJ, she lied to the state when she indicated that she was willing and able to work in order to receive benefits. Additionally, the ALJ noted that Maynes did not seek any treatment for any complaint until more than two years after

9

her alleged onset date. She has never sought treatment for depression and anxiety. As far as her activities of daily living, Maynes reported that she takes care of her own grooming needs, does household chores, cooks, shops for groceries, and drives a couple times a day to drop off and pick up her grandchild at the bus stop [TR 17]. As the ALJ found, these activities are inconsistent with disabling pain. Accordingly, substantial evidence supports the ALJ's decision to discredit Maynes' subjective complaints of disabling pain.

IV.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS**:

(1)   the plaintiff's motion for summary judgment [DE #10] is **DENIED**;

(2)   the Commissioner's motion for summary judgment [DE #11] is **GRANTED**;

(3)    the decision of the Commissioner is **AFFIRMED** pursuant to sentence 4 of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

(4)   a judgment will be entered contemporaneously with this Opinion and Order.

This 27th day of May, 2009.



**Signed By:**
*Karl S. Forester*  KSF
**United States Senior Judge**